# CASE NO. 26-1248

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

CAREFIRST OF MARYLAND, et al.,
*Plaintiffs-Appellants,*
v.
JOHNSON & JOHNSON, et al.,
*Defendants-Appellees*.

On Appeal from the United States District Court for the
Eastern District of Virginia, No. 2:23-cv-629
(Hon. Jamar K. Walker)

## BRIEF OF THE FEDERAL TRADE COMMISSION AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY FOR REVERSAL

DANIEL GUARNERA
*Director*

TAYLOR C. HOOGENDOORN
*Deputy Director*

KARA L. MONAHAN
*Deputy Assistant Director*

ARMINE BLACK
*Attorney*
*Bureau of Competition*

BRENDAN T. CHESTNUT
*Director*

ANUPAMA SAWKAR
*Chief Counsel for Intellectual Property*
*Office of Policy Planning*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2665

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

INTEREST OF AMICUS CURIAE ........................................................................2

STATEMENT .........................................................................................................3

ARGUMENT ..........................................................................................................6

    I.   Willful acquisition or maintenance of monopoly power does not require proof of specific intent ..................................................................7

    II.  The district court misapplied Supreme Court and Fourth Circuit precedent to require proof of specific intent .......................................12

CONCLUSION ....................................................................................................21

**TABLE OF AUTHORITIES**

**CASES**

*2311 Racing LLC v. NASCAR, LLC*,
  139 F.4th 404 (4th Cir. 2025) ............................................................ 5, 7, 13, 16

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008)...................................................................................3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985)........................................................................ passim

*Chicago Bd. of Trade v. United States*,
  246 U.S. 231 (1918)............................................................... 8, 14, 16

*Cohens v. Virginia*,
  19 U.S. 264 (1821)................................................................................14

*Conwood Co. v. U.S. Tobacco Co.*,
  290 F.3d 768 (6th Cir. 2002) .............................................................10

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
  111 F.4th 337 (4th Cir. 2024) ................................................ 8, 13, 16

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
  122 F.4th 120 (4th Cir. 2024) ................................................ 5, 7, 13

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ................................................ 10, 11, 12, 13

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992)................................................................................7

*FTC v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020) ................................................................2

*FTC v. Actavis, Inc.*,
  570 U.S. 136 (2013)................................................................................2

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ................................................................7

*FTC v. Shkreli*,
  581 F. Supp. 3d 579 (S.D.N.Y. 2022) ................................................2

*FTC v. Shkreli*,
  No. 22-728, 2024 WL 1026010 (2d Cir. Jan. 23, 2024)....................2

*Greenville Pub. Co. v. Daily Reflector, Inc.*,
  496 F.2d 391 (4th Cir. 1974) ........................................................... 12, 13

*Imaging Ctr., Inc. v. W. Maryland Health Sys., Inc.*,
  158 F. App'x 413 (4th Cir. 2005) ...............................................18

*Impax Labs., Inc. v. FTC*,
  994 F.3d 484 (5th Cir. 2021) ......................................................2

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003) ........................................................7

*McMellon v. United States*,
  387 F.3d 329 (4th Cir. 2004) ......................................................13

*McWane, Inc. v. FTC*,
  783 F.3d 814 (11th Cir. 2015) ....................................................11

*Morris Commc'ns*,
  364 F.3d 1288 (11th Cir. 2004) ...................................................7

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023).................................................................14

*Nat'l Reporting Co. v. Alderson Reporting Co.*,
  763 F.2d 1020 (8th Cir. 1985) ....................................................10

*NCAA v. Bd. of Regents of Univ. of Okla.*,
  468 U.S. 85 (1984)....................................................................8

*New York v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015) ........................................................7

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018)....................................................................7

*Oksanen v. Page Mem'l Hosp.*,
  945 F.2d 696 (4th Cir. 1991) .......................................... 16, 17, 18

*Prairie Farmer Pub. Co. v. Indiana Farmer's Guide Pub. Co.*,
  88 F.2d 979 (7th Cir. 1937) ........................................................8

*Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*,
  899 F.2d 951 (10th Cir. 1990) ....................................................10

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979).................................................................14

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993)............................................................. 10, 11

*Swift & Co. v. United States,*
    196 U.S. 375 (1905)..................................................................................11

*Times-Picayune Pub. Co. v. United States,*
    345 U.S. 594 (1953)................................................................................1, 9

*Tops Mkts., Inc. v. Quality Mkts., Inc.,*
    142 F.3d 90 (2d Cir. 1998) .....................................................................10

*United Food & Com. Workers Loc. 1776 v. Takeda Pharm. Co.,*
    11 F.4th 118 (2d Cir. 2021) ......................................................................9

*United States v. Aluminum Co. of Am.* (*"Alcoa"*),
    148 F.2d 416 (2d Cir. 1945) ........................................................ passim

*United States v. Griffith,*
    334 U.S. 100 (1948)................................................................................9, 11

*United States v. Grinnell Corp.,*
    384 U.S. 563 (1966).................................................................................7, 20

*United States v. Microsoft Corp.,*
    253 F.3d 34 (D.C. Cir. 2001)............................................... 7, 11, 17

*Viamedia, Inc. v. Comcast Corp.,*
    951 F.3d 429 (7th Cir. 2020) ...................................................................7

*White v. Rockingham Radiologists, Ltd.,*
    820 F.2d 98 (4th Cir. 1987) ....................................................................17

**STATUTES**

15 U.S.C. §§ 41–58......................................................................................2

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of
    Antitrust Principles and Their Application (Wolters Kluwer 2025) ......... passim

Robert H. Bork, The Antitrust Paradox (1978) ...................................................15

U.S. Dep't of Just. & Fed. Trade Comm'n, Merger Guidelines (2023)..................20

**INTRODUCTION**

As a matter of black-letter law, monopolization under Section 2 of the Sherman Act does not require proof of specific intent to exclude rivals or harm competition. It "demands only a general intent to do the act." *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 626 (1953) (citing *United States v. Aluminum Co. of Am.* ("*Alcoa*"), 148 F.2d 416, 432 (2d Cir. 1945) (Hand, J.)). That is because antitrust law is concerned with the competitive impact of conduct, not the monopolist's "purity of heart." Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 1506 (Wolters Kluwer 2025).

The district court departed from this bedrock principle by requiring an antitrust plaintiff to prove that a biosimilar drug manufacturer intended to exclude rivals when it made an allegedly anticompetitive acquisition in violation of Section 2. Requiring proof of intent in a monopolization case "makes nonsense of" the Sherman Act, *Alcoa*, 148 F.2d at 432, clashes with Supreme Court and Fourth Circuit precedent, and contravenes the congressional policy underlying federal antitrust laws. If such a rule were allowed to stand, it would impede antitrust enforcement, undermine competitive markets, and harm American consumers. The Court should correct the district court's error and reaffirm that anticompetitive intent is not an element of monopolization under Section 2.

1

## INTEREST OF AMICUS CURIAE

The Federal Trade Commission is a federal agency charged with protecting America's consumers from anticompetitive and unfair conduct.[1] The Commission achieves this core mission through vigorous enforcement of federal antitrust laws. As the primary federal antitrust enforcer in the pharmaceutical industry, the Commission has extensive experience analyzing and successfully challenging monopolization and other anticompetitive conduct by drug manufacturers. *See, e.g.*, *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013); *Impax Labs., Inc. v. FTC*, 994 F.3d 484 (5th Cir. 2021); *FTC v. AbbVie Inc.*, 976 F.3d 327 (3d Cir. 2020); *FTC v. Shkreli*, 581 F. Supp. 3d 579 (S.D.N.Y. 2022), *aff'd*, 2024 WL 1026010 (2d Cir. Jan. 23, 2024).[2] The Commission also reviews pharmaceutical patent settlement agreements, conducts studies, hosts listening sessions, and collaborates with other agencies to promote drug competition, including competition in the biologic marketplace.[3]

---

[1] 15 U.S.C. §§ 41–58.

[2] For a summary of other cases, see Fed. Trade Comm'n, *Overview of FTC Actions in the Pharmaceutical Products and Distribution* (Mar. 2026), https://www.ftc.gov/system/files/ftc_gov/pdf/Overview-Pharma.pdf.

[3] *See, e.g.*, *FTC and DOJ to Host Listening Sessions on Lowering Americans' Drug Prices Through Competition: Sessions to Discuss Generic and Biosimilar Availability, Prescription Drug Formularies and Benefits, and Regulatory Barriers* (June 11, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/06/ftc-doj-host-listening-sessions-lowering-americans-drug-prices-through-competition; (Continued…)

2

Because the Commission has a strong interest in ensuring the proper application of federal antitrust laws, we submit this brief under Federal Rule of Appellate Procedure 29(a)(2) to address a legal error in the district court's treatment of intent. The Commission takes no position on whether CareFirst would have survived summary judgment under the correct application of the monopolization test.

## STATEMENT

J&J's biologic drug Stelara (ustekinumab) is one of the highest-grossing drugs in the United States. It is approved for the treatment of a variety of autoimmune conditions, including psoriasis, psoriatic arthritis, Crohn's disease, and ulcerative colitis. ECF No. 794 at 2, ¶ 1. J&J was the sole manufacturer of ustekinumab from its launch in 2009 through 2024. *Id.* ¶¶ 2–3.

In 2020, J&J acquired Momenta, *id.* ¶ 19, a pharmaceutical company that discovers and develops therapies for immune-mediated diseases.[4] With this

---

*Joint Statement of the Food & Drug Administration and the Federal Trade Commission Regarding a Collaboration to Advance Competition in the Biologic Marketplace* (Feb. 3, 2020), https://www.ftc.gov/system/files/documents/public_statements/1565273/v190003f daftcbiologicsstatement.pdf.

[4] The FTC's decision not to take action on this transaction at the time of the acquisition is not an indication of its legality. *See, e.g.*, *Altria Group, Inc. v. Good*, 555 U.S. 70, 89–90 (2008) ("The FTC's failure to require petitioners to correct their allegedly misleading use of 'light' descriptors is not evidence [that the FTC (Continued…)

3

acquisition, J&J acquired exclusive control over all Momenta patents. *Id.* Momenta's patent portfolio comprised over 500 patents, including four manufacturing patents covering methods for making biosimilar copies of biologic drugs (the "Momenta manufacturing patents"). *Id.* ¶ 16.

In November 2022, J&J sued Amgen for patent infringement after Amgen notified J&J of its intent to launch a ustekinumab biosimilar. *Id.* ¶ 21. Three months later, J&J amended its complaint to allege infringement of the Momenta manufacturing patents. *Id.* ¶ 22. In May 2023, J&J settled its claims against Amgen, granting Amgen a license to use the Momenta manufacturing patents beginning January 1, 2025. *Id.* ¶ 23. As a result, Amgen did not begin selling its ustekinumab biosimilar until January 2025, although it received FDA approval in October 2023. *Id.* ¶ 24. J&J settled infringement claims against six other ustekinumab biosimilar manufacturers in 2023 and 2024 on similar terms. *Id.* ¶ 25.

In December 2023, CareFirst of Maryland filed a class action complaint against J&J alleging, among other claims, that J&J willfully maintained its monopoly power in the ustekinumab market by wrongfully acquiring the Momenta manufacturing patents and asserting those patents to delay or prevent ustekinumab competition in violation of Section 2 of the Sherman Act. ECF No. 1 ¶ 280. The

---

authorized the use of the descriptor]; agency nonenforcement of a federal statute is not the same as a policy of approval.").

4

district court initially denied J&J's motion for summary judgment on the Momenta acquisition theory, ECF No. 794 at 39–45, but later reversed its decision on J&J's motion for reconsideration, ECF No. 887 at 4–20.

In its summary judgment opinion, the district court held that the "Fourth Circuit's most recent, and thus controlling, articulation of the willfulness standard is whether the defendant 'intended to "exclude rivals on some basis other than efficiency."'" ECF No. 794 at 40–41 (quoting *2311 Racing LLC v. NASCAR, LLC*, 139 F.4th 404, 410 (4th Cir. 2025) (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985)); *id.* (also citing *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 122 F.4th 120, 122 (4th Cir. 2024) (denial of hearing en banc)). The district court noted that this "articulation of the monopolization standard is . . . inconsistent with Supreme Court precedent." ECF No. 794 at 40–41 n.19. It recognized that "intent is not expressly contemplated and certainly not required" under the Supreme Court's burden-shifting liability framework for monopoly maintenance claims under Section 2, although "'knowledge of intent may be [] helpful in cases involving practices . . . which can have numerous explanations and are very difficult to characterize as competitive or anticompetitive.'" *Id.* (quoting Areeda & Hovenkamp ¶ 651).

In its opinion on J&J's motion for reconsideration, the district court acknowledged that "[b]oth parties take issue with the Court's 'adoption of a legal

5

standard argued by neither side.'" ECF No. 887 at 4 (cleaned up) (quoting ECF No. 827 at 4; ECF No. 871 at 31). But it reiterated the willfulness standard articulated in the summary judgment opinion and declined to engage with CareFirst's suggestion that the court's articulation constituted clear error because CareFirst had not moved for reconsideration. *Id.* at 5 & n.5.

CareFirst subsequently moved the district court to reconsider its decision on J&J's motion for reconsideration and sought to introduce new evidence of J&J's specific intent to monopolize because CareFirst had previously "'litigated this case based on the understanding that specific intent to monopolize is not an element of the legal standard for a monopolization claim.'" ECF No. 921 at 2 (quoting ECF No. 904 at 5–6). The district court stood by "the standard it articulated in its opinions on summary judgment and reconsideration" and denied CareFirst's motion for reconsideration. *Id.* at 2–4.

## ARGUMENT

Monopolization requires only a general intent to perform the act that results in or maintains monopoly power, not specific intent for the act to have anticompetitive consequences. The district court erred in its articulation of the monopolization standard under Section 2 of the Sherman Act by misreading *2311 Racing* and *Duke Energy* to require proof of specific anticompetitive "inten[t] to 'exclude rivals on some basis other than efficiency.'" ECF No. 794 at 40–41

(quoting *2311 Racing*, 139 F.4th at 410 and *Duke Energy*, 122 F.4th at 122). The district court's misstatement of well-settled monopolization doctrine has the potential to undermine future antitrust law enforcement efforts, impede competition, and harm consumers in the form of higher prices or lower quality goods or services.

## I. WILLFUL ACQUISITION OR MAINTENANCE OF MONOPOLY POWER DOES NOT REQUIRE PROOF OF SPECIFIC INTENT

Monopolization under Section 2 of the Sherman Act has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 480 (1992) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).[5] Then, defendants can rebut the *prima facie* case by demonstrating legally cognizable, "nonpretextual" business justifications. *Microsoft*, 253 F.3d at 59. If

---

[5] Courts follow a burden-shifting framework in monopolization cases. *See United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) (en banc); *see also New York v. Actavis PLC*, 787 F.3d 638, 652–59 (2d Cir. 2015); *LePage's Inc. v. 3M*, 324 F.3d 141, 163–64 (3d Cir. 2003) (en banc); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 463–64 (7th Cir. 2020); *FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020); *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1293–98 (11th Cir. 2004). Courts follow a similar burden-shifting framework in cases brought under Section 1 of the Sherman Act. *See, e.g.*, *Ohio v. Am. Express Co.*, 585 U.S. 529, 541–42 (2018).

defendant succeeds, the burden shifts back to plaintiff to rebut the justifications—

for example, by showing that they are pretextual—or otherwise overcome them,

for example by showing that the anticompetitive harm outweighs the

procompetitive benefits or that the benefits can be achieved in less restrictive ways.

*See Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 343,

365–66 (4th Cir. 2024) (holding that plaintiff created genuine dispute of material

fact regarding defendant's business justifications that could not be resolved on

summary judgement).

It is black-letter law that an antitrust plaintiff does not need to prove specific

intent to monopolize. Indeed, as a general principle of antitrust, "good motives will

not validate an otherwise anticompetitive practice." *NCAA v. Bd. of Regents of

Univ. of Okla.*, 468 U.S. 85, 101 n.23 (1984); *see also Chicago Bd. of Trade v.

United States*, 246 U.S. 231, 238 (1918) ("good intention" cannot "save an

otherwise objectionable" restraint of trade). The reason is that the federal antitrust

laws focus on the "anticompetitive consequences of the act, not the defendant's

purpose." Areeda & Hovenkamp ¶ 658; *see also Prairie Farmer Pub. Co. v.

Indiana Farmer's Guide Pub. Co.*, 88 F.2d 979, 982 (7th Cir. 1937) (explaining

that antitrust laws are "declarative of economic policy, violation of which is

deemed detrimental to common welfare, irrespective of motive or other wrongful

intent").

Accordingly, as the Supreme Court has repeatedly explained, "monopolization under § 2 demands only a general intent to do the act." *Times-Picayune*, 345 U.S. at 626 (1953) (citing *Alcoa*, 148 F.2d at 432); *see also Aspen Skiing*, 472 U.S. at 602. The "general intent to do the act" is established by the very fact that the act is done, irrespective of the monopolist's motive, purpose, or intent for the act to have anticompetitive consequences. *See, e.g.*, *Alcoa*, 148 F.2d at 432; *United States v. Griffith*, 334 U.S. 100, 105 (1948) (holding that "[i]t is sufficient that a restraint of trade or monopoly results as the consequence of a defendant's conduct or business arrangements" even without the defendant intending these consequences). "[A]bsent some anomalous accident or involuntary spasm of industrial consequence," exclusionary conduct will satisfy the general intent requirement. *See, e.g.*, *United Food & Com. Workers Loc. 1776 v. Takeda Pharm. Co.*, 11 F.4th 118, 137 (2d Cir. 2021).

For example, in the seminal *Alcoa* decision Judge Learned Hand wrote that "transactions, neutral on their face" and "however innocently" undertaken, constituted monopolization without proof that the monopolist had "specific intent" or "motive . . . to exclude others and perpetuate its hold upon the ingot market." *Alcoa*, 148 F.2d at 431–32. The defendant was held liable despite believing—and the court assuming as true—that it maintained its monopoly power through "fair means," and "skill, energy, and initiative." *Id.* at 430–31. In reaching this result,

9

the court explained that "to limit" improper "exclusion . . . to maneuvres not honestly industrial, but actuated solely by a desire to prevent competition" would "emasculate the Act [and] would permit just such consolidations as it was designed to prevent." *Id.* at 431. This is why antitrust liability turns on the anticompetitive consequences of the defendant's actions, rather than its intentions. To read Section 2's prohibition against monopolization to demand specific intent "makes nonsense" of the Sherman Act. *Aspen Skiing*, 472 U.S. at 602 n.28 (quoting *Alcoa*, 148 F.2d at 432).

This distinction between general intent to undertake an exclusionary act and specific, anticompetitive intent to harm competition reflects a key difference between monopolization and attempted monopolization. Attempted monopolization requires "specific intent to monopolize." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 453 (4th Cir. 2011).[6] This makes sense because, as the

---

[6] The other circuit courts make the same distinction. *See, e.g.*, *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) ("[F]or a 'completed' monopolization claim to succeed, the plaintiff must prove a general intent on the part of the monopolist to exclude; while by contrast, to prevail on a 'mere' attempt claim, the plaintiff must prove a specific intent to 'destroy competition or build a monopoly.'" (quoting *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 101 (2d Cir. 1998)); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 973 (10th Cir. 1990); *Nat'l Reporting Co. v. Alderson Reporting Co.*, 763 F.2d 1020, 1025 (8th Cir. 1985).

10

Supreme Court has repeatedly explained, "'Where acts are not sufficient in themselves to produce a result which the law seeks to prevent—for instance, the monopoly— . . . an intent to bring it to pass is necessary in order to produce a dangerous probability that it will happen.'" *Spectrum Sports*, 506 U.S. at 455 (quoting the seminal attempted monopolization opinion *Swift & Co. v. United States*, 196 U.S. 375, 396 (1905) (Holmes, J.)).

But where acts result in or maintain a monopoly, an inquiry into the monopolist's anticompetitive intent is not required, and courts instead assess whether the defendant's conduct is "exclusionary" or "anticompetitive"—that is, whether the conduct has hampered the growth of rivals through means other than "competition on the merits." *Aspen Skiing*, 472 U.S. at 602, 605 & n.32; *see also Kolon*, 637 F.3d at 441; *Microsoft*, 253 F.3d at 62, 65. In this context, a plaintiff can use the defendant's anticompetitive intent to bolster a showing of the likely exclusionary effect of the defendant's conduct, but anticompetitive intent is not required. *See, e.g.*, *Griffith*, 334 U.S. at 105; *McWane, Inc. v. FTC*, 783 F.3d 814, 840 (11th Cir. 2015) ("'Evidence of the intent behind the conduct of a monopolist is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct.'" (quoting *Microsoft*, 253 F.3d at 59)). "To require a greater showing would cripple the Act." *Griffith*, 334 U.S. at 105.

11

The Fourth Circuit's cases have long reflected this important difference between "the specific intent required to prove an illegal attempt to monopolize" and "the general intent which, accompanied by monopoly power, constitutes the offense of monopolization." *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 396 (4th Cir. 1974). For example, *Kolon* involved both a claim for monopolization and attempted monopolization. 637 F.3d 435. In analyzing the willful maintenance element, the Court focused on the competitive effects of alleged exclusive agreements without mentioning specific intent to monopolize. *Id.* at 451–53. Without addressing specific intent, it held that "Kolon adequately pled all elements of its monopolization claim." *Id.* at 453. After reaching that conclusion, the Fourth Circuit then turned to Kolon's attempted monopolization claim and analyzed, for the first time, whether Kolon had alleged DuPont's "specific intent to monopolize." *Id.*

## II.    THE DISTRICT COURT MISAPPLIED SUPREME COURT AND FOURTH CIRCUIT PRECEDENT TO REQUIRE PROOF OF SPECIFIC INTENT

The district court erred in departing from binding Supreme Court and Fourth Circuit precedent by requiring proof of anticompetitive intent for CareFirst's monopolization claim. The district court even acknowledged that anticompetitive "intent is . . . certainly not required" to prove monopolization under Supreme Court precedent. ECF No. 794 at 40–41 n.19. But it held that the "Fourth Circuit's most recent, and thus controlling, articulation of the willfulness standard is whether the

12

defendant 'intended to exclude rivals on some basis other than efficiency.'" *Id.* at 40–41 (quoting *2311 Racing*, 139 F.4th at 410 and *Duke Energy*, 122 F.4th at 122).[7] The district court recognized that a specific intent requirement, in its own words, would be "inconsistent with Supreme Court precedent," but it disregarded the Supreme Court's clear and repeated resolution of this issue and adopted a new, erroneous standard. ECF No. 794 at 40–41 n.19.

Two isolated statements of dicta in *2311 Racing* and *Duke Energy* appear to be the district court's source of confusion. In *2311 Racing*, the Fourth Circuit stated that "Section 2 requires that the defendant have engaged in anticompetitive conduct—*i.e.*, conduct intended to 'exclude rivals on some basis other than efficiency.'" *2311 Racing*, 139 F.4th at 410 (quoting *Aspen Skiing*, 472 U.S. at 605). The Fourth Circuit used similar language in *Duke Energy*, 111 F.4th at 353. ("But the second element is at issue—whether Duke Energy maintained its power

---

[7] The District Court was mistaken not only on the law of antitrust, but also on the law of precedent. In the Fourth Circuit, a panel's "most recent . . . articulation" of the law is not the "controlling" one. ECF No. 794 at 40. "When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004). To the extent the Supreme Court's unambiguous statements on this issue do not settle the matter—and to the further extent this panel shares the district court's reading of *2311 Racing* and *Duke Energy* (which it should not)—the prior panel rule would nonetheless warrant reversal and application of the correct rule: specific intent is not an element of a monopolization claim. *See, e.g.*, *Kolon*, 637 F.3d at 451–53; *Greenville Pub.*, 496 F.2d at 396–98.

13

through anticompetitive conduct, *i.e.*, conduct intended to 'exclude rivals on some basis other than efficiency.'" (quoting *Aspen Skiing*, 472 U.S. at 605)).[8]

The district court improperly "parsed" these statements in *2311 Racing* and *Duke Energy* "'as though we were dealing with language of a statute'" to create a new intent requirement that conflicts with a century's worth of precedent. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373–74 (2023) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979)).[9] But these statements must be read in reference to *Aspen Skiing*, which the Fourth Circuit quoted in each case in support.

*Aspen Skiing* shows that "knowledge of intent," though not required for liability, "may help the court to interpret facts and to predict consequences" and to distinguish competition on the merits from improper exclusion, particularly where the challenged conduct by a monopolist can have numerous explanations. Areeda & Hovenkamp ¶ 651 (quoting *Chicago Bd. of Trade*, 246 U.S. at 238). There, a monopolist ski resort unilaterally refused to deal with its competitor after years of jointly marketing mountain passes. To determine whether "it is fair to characterize

---

[8] In its opinion, the district court cited to Judge Niemeyer's statement in support of denying rehearing en banc. *See* ECF No. 794 at 41 (citing 122 F.4th 120, 122 (Mem.)). Though such a statement is not precedential, the same language appears in the published panel opinion.

[9] *Nat'l Pork Producers Council*, 598 U.S. at 373–74 ("Instead, we emphasize, our opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." (citing *Cohens v. Virginia*, 19 U.S. 264, 399–400 (1821) (Marshall, C.J.)).

14

its behavior as predatory," the Supreme Court analyzed whether the monopolist "has been 'attempting to exclude rivals on some basis other than efficiency.'" *Aspen Skiing*, 472 U.S. at 605 (quoting Robert H. Bork, The Antitrust Paradox 138 (1978)).

To answer that question, the Court looked at *anticompetitive effects* of the monopolist's refusal to deal by "examin[ing] the effect of the challenged pattern of conduct on consumers, on Ski Co.'s smaller rival, and on Ski Co. itself." *Id.* at 605. Concluding that both consumers and the rival were adversely affected by the conduct, and the monopolist lacked any business justification for it, the Court held that "the evidence supports an inference that Ski Co. was not motivated by efficiency concerns and that it was willing to sacrifice short-run benefits and consumer goodwill in exchange for a perceived long-run impact on its smaller rival." *Id.* at 610–11. While the Court used evidence of intent in its analysis of business justifications, it made clear that "intent is *merely relevant* to the question whether the challenged conduct is fairly characterized as 'exclusionary' or 'anticompetitive,'" *id.* at 602 (emphasis added), and reiterated that to demand specific intent in a monopolization case "makes nonsense of" Section 2. *Id.* at 602 n.28 (quoting *Alcoa*, 148 F.2d at 432).

The Fourth Circuit's opinions in *2311 Racing* and *Duke Energy* faithfully applied this Supreme Court precedent. Anticompetitive intent was not discussed at

15

all in *2311 Racing.* The conduct at issue was a contractual provision "requiring a prospective participant" in NASCAR races "to give a release for past conduct as a condition for doing business." *2311 Racing*, 139 F.4th at 410. The Fourth Circuit concluded that "[t]he effect of such a release" was "not to eliminate or injure competition." *Id.* It vacated the district court's preliminary injunction because "[n]either the plaintiffs nor the district court has shown how the release would have injured *competition*." *Id.* (emphasis in original).

To the extent *Duke Energy* relied on evidence of anticompetitive intent, it did so consistent with Supreme Court instructions to use intent only to "help the court to interpret facts and to predict consequences." *Chicago Bd. of Trade*, 246 U.S. at 238; *see also Aspen Skiing*, 472 U.S. at 602. The Fourth Circuit noted in *Duke Energy* that the evidence of "anticompetitive malice . . . bolsters our conclusion that the case is trial worthy." 111 F.4th at 367. But it focused on the nature and likely effects of the challenged conduct to determine whether the incumbent competed on the merits or engaged in anticompetitive conduct. *See, e.g., id.* at 362 ("The record is thus sufficient to support a finding that Duke's blend-and-extend strategy, coupled with its Butler Warner agreement, independently produced anticompetitive effects.").

Nor, contrary to J&J's arguments below, does *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696 (4th Cir. 1991) (en banc), require proof of "anticompetitive

16

purposes" or "knowledge" that the challenged conduct "would afford [defendant] monopoly power." ECF No. 605 at 22–23 (citing *Oksanen* and arguing that "willfulness" requires showing "that a defendant acted for anticompetitive purposes"). In reviewing a grant of summary judgment, *Oksanen* analyzed the second element of the monopolization test—willful acquisition or maintenance of monopoly power (which the Court dubbed "monopolistic intent" as a shorthand). The Court noted that the defendants had offered a procompetitive justification, which the plaintiff had not rebutted. It concluded that a plaintiff must show "that a jury could find no valid business reason or concern for efficiency" for the challenged conduct. *Oksanen*, 945 F.2d at 710 (quoting *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 105 (4th Cir. 1987)). To understand this statement, recall that Section 2 claims follow a familiar burden-shifting approach, where defendants may rebut a *prima facie* showing of monopolization by proving valid business justifications for their conduct. *See supra* Section I. In turn, plaintiffs may rebut any proffered valid business justifications, such as by showing that those justifications are pretextual or are outweighed by anticompetitive harms. *See Microsoft*, 253 F.3d at 58–59.

*Oksanen* and *White*—decided 35 and 39 years ago, respectively—fit comfortably within the burden-shifting approach that has emerged in ensuing decades. *See supra* Section I. Each determined that plaintiffs failed to offer

17

evidence sufficient to rebut proffered valid business justifications for the challenged conduct, which meant that plaintiffs could not succeed on the second element of a monopolization claim. Indeed, a later unpublished decision from this Court applied *Oksanen* in exactly that way. *See Imaging Ctr., Inc. v. W. Maryland Health Sys., Inc.*, 158 F. App'x 413, 420–21 (4th Cir. 2005) (holding that conduct did not violate Section 2 where defendant proffered "valid business and patient care reasons" and plaintiff "had offered no effective rebuttal to these procompetitive justifications" because claims of "reduced output and quality" were "unsupported" and prices did not increase (quoting *Oksanen*, 945 F.2d at 710)). Nothing in *Oksanen* or *White* requires any showing of specific intent, which would be contrary to the Supreme Court's clear directive in *Aspen Skiing*.

Nor is the law's protection of "unwitting" monopolists that had market dominance "thrust upon" them "by force of accident" tantamount to requiring proof of specific intent (or knowledge, as J&J calls it).[10] *See Alcoa*, 148 F.2d at

---

[10] J&J argued below that willfulness required showing specific intent. *See, e.g.*, ECF No. 605 at 17 ("Plaintiffs must also show that, at the time of the acquisition, J&J knew or intended that, by acquiring Momenta, it would be maintaining or adding to its alleged monopoly power . . . ."); ECF No. 542 at 24 ("Plaintiffs must also show that . . . J&J knew or intended that . . . it would be maintaining or adding to its alleged monopoly power."); ECF No. 444 at 39 ("Establishing willfulness requires evidence showing 'monopolistic intent'—i.e., that a defendant acted for anticompetitive purposes . . . ."). J&J later also argued that "Plaintiffs must show, at minimum, that J&J acted with knowledge that the Momenta Manufacturing Patents could be used to exclude with respect to Stelara" and "and would afford it (Continued…)

18

429–30. This screen is merely meant to separate monopolies resulting from natural growth or external supply-and demand-factors—such as "changes in taste or in cost"—from monopolies resulting from defendant's exclusionary actions. *Id.* As discussed in Section I, whether an act is exclusionary turns on whether it is "competition on the merits"; specific intent can be probative of the likely exclusionary effect of the conduct, but its absence does not save an action that is otherwise anticompetitive. *See, e.g.*, *Alcoa*, 148 F.2d at 430–32. This is particularly true where the challenged conduct is a consummated acquisition and its effects can be readily seen. The federal antitrust agencies' Merger Guidelines confirm that the agencies "give little weight" to the absence of specific intent in evaluating acquisitions. U.S. Dep't of Just. & Fed. Trade Comm'n, Merger Guidelines § 4.1 (2023).

Applying the correct standard for willfulness under Supreme Court and Fourth Circuit precedent, J&J's acquisition of the Momenta manufacturing patents is sufficient to establish a "willful" act. Indeed, a leading antitrust treatise notes

---

monopoly power." ECF No. 605 at 23. J&J contends that this standard is somehow different from specific intent to monopolize. *Id.* Such a distinction has no basis in law. "[N]o monopolist monopolizes unconscious of what he is doing." *Aspen Skiing*, 472 U.S. at 602 (quoting *Alcoa*, 148 F.2d at 432). There is no practical difference between having to prove that J&J bought the patents knowing they would afford it monopoly power and intending that they would afford it monopoly power. Thus, J&J's knowledge standard is simply a back door to specific intent.

19

that "[a]cquisition by a monopolist of exclusive rights in related patents should presumptively be a § 2 'exclusionary practice,' and this applies with equal force to the acquisition of a firm that owns such patents, if the effect of the acquisition is to give the acquirer an exclusive right in them and this serves to increase or prolong the monopolist's market power." Areeda & Hovenkamp ¶ 707. As alleged in the complaint, J&J was already a monopolist at the time of the challenged acquisition. ECF No. 641 ¶¶ 208–15. And it allegedly extended its monopoly power, not by "historic accident," *Grinnell*, 384 U.S. at 571, but through the acquisition of the Momenta manufacturing patents as part of the Momenta transaction for $6.5 billion. Antitrust liability does not turn on the rigor of J&J's due diligence or what J&J knew about the Momenta manufacturing patents at the time of the acquisition.[11] It is sufficient that J&J bought those patents to prove a willful act. Of course, whether such act is ultimately unlawful depends on the plaintiff's ability to prove monopoly power and the likely anticompetitive effects of the transaction.

---

[11] Requiring proof that defendant knew of the patents' scope or potential anticompetitive consequences of the transaction is not only contrary to the law, it would also hamper Section 2 enforcement of anticompetitive acquisitions while increasing burdens on parties. *See* Areeda & Hovenkamp ¶ 1506 (inquiring into a defendant's mental state can "invite the parties to examine thousands of documents, to depose nearly everyone, to resist early disposition on the ground that disputed intent requires trial, to burden the judge and jury with ambiguous evidence, and to invite decision on the basis of relative purity of heart rather than competitive impact").

20

## CONCLUSION

By mistakenly requiring proof of specific intent, the district court gives a monopolist a free pass to avoid liability when its conduct harms competition on the merits but there is no evidence that it intended to do so—either because it actively avoided creating such evidence or because that evidence does not exist. Such an intent-based test makes nonsense of the Sherman Act, contradicts precedent, and risks undermining vigorous market competition and effective government enforcement if left unchecked. Great for monopolists, bad for American consumers.

The Court should correct the district court's legal error and hold that proof of "willful" conduct does not require proof of specific intent to monopolize.

Dated: June 22, 2025

Respectfully submitted,

/s/ *Brendan T. Chestnut*

DANIEL GUARNERA
*Director*

BRENDAN T. CHESTNUT
*Director*

TAYLOR C. HOOGENDOORN
*Deputy Director*

ANUPAMA SAWKAR
*Chief Counsel for Intellectual Property*
*Office of Policy Planning*

KARA L. MONAHAN
*Deputy Assistant Director*

ARMINE BLACK
*Attorney*
*Bureau of Competition*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2665

*Counsel for*
*Federal Trade Commission*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


Dated: June 22, 2026                            /s/ *Brendan T. Chestnut*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the length limits permitted by Federal Rule of Appellate Procedure 29(a)(5). The brief is 5,143 words, excluding the portions exempted by Rule 32(f). The brief's typeface and type style comply with Rule 32(a)(5) and (6).


Dated: June 22, 2026　　　　　　　　　　　　　/s/ *Brendan T. Chestnut*